UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND PAUL PRICE, | Case No. 1:20-cv-00131-EPG (PC) |
| Plaintiff, | ORDER FINDING COGNIZABLE CLAIMS |
| v. | ORDER FOR PLAINTIFF TO: |
| STU SHERMAN, et al., | (1)   NOTIFY THE COURT THAT HE WANTS TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THIS ORDER; |
| Defendants. | (2)   FILE A FIRST AMENDED COMPLAINT; OR |
| | (3) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO THIS COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER |
| | (ECF NO. 1) |
| | THIRTY (30) DAY DEADLINE |

Edmond Paul Price ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on January 29, 2020.  (ECF No. 1).

The Court has reviewed the complaint and finds that the following claims should proceed past the screening stage: a claim against Defendants Alvarado and Carivao for excessive force in violation of the Eighth Amendment; a claim against Defendant Martinez for

1

failure to protect in violation of the Eighth Amendment; a claim against Defendants Martinez, Alvarado, and Carivao for conspiracy to violate Plaintiff's Eighth Amendment rights; a claim for deliberate indifference to serious medical needs against Defendants Alvarado and Carivao; a claim for violation of the First Amendment against Defendants Alvarado and Carivao; and a claim for violation of the Fourth Amendment for an unreasonable search against Defendant Alvarado.

Plaintiff now has options as to how to move forward.  Plaintiff may file an amended complaint based on the legal standards in this order if he believes that additional facts would state additional claims.  If Plaintiff files an amended complaint, the Court will screen that amended complaint in due course.  Alternatively, Plaintiff may file a statement with the Court saying he wants to go forward only on the claims identified above.  Finally, Plaintiff may file a statement with the Court that he wishes to stand on this complaint and have it reviewed by a district judge, in which case the Court will issue findings and recommendations to a district judge consistent with this order.

I.    **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 13), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1    conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

2    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient

3    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

4    (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting

5    this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts

6    "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d

7    677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a

8    plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

9         Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

10   pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

11   *pro se* complaints should continue to be liberally construed after Iqbal).

12   **II.    SUMMARY OF PLAINTIFF'S COMPLAINT**

13        Plaintiff's complaint alleges the following:

14        At all relevant times, Plaintiff was housed at Substance Abuse Treatment Facility at

15   Corcoran ("SATF"), on D Facility in Building 1, cell 247.  Plaintiff was assigned as a 2nd watch

16   porter.  He had no incidents or disciplinary actions previously.

17        Plaintiff's complaint describes several events in September 2019, where correctional

18   officer Martinez appeared to treat him unfairly.  For example, she refused to allow him to

19   return to building 1 after a medical appointment.  Although Martinez said there was no building

20   entry by inmates until yard recall, she immediately thereafter let in another inmate.  She refused

21   to allow Plaintiff to do "mailouts" where inmates send property out that does not fit in an

22   envelope.  She prohibited him from showering, while lettering several Hispanic workers

23   shower.  Plaintiff describes other incidents as well.

24        On September 21, 2018, at approximately 08:00 hours, Plaintiff was let out of his cell to

25   perform his job duties.  Plaintiff did those job duties and then got in line with several co-

26   workers to use one of the kiosks in the dayroom.  After a couple of minutes, Plaintiff's cell

27   mate brought him a cup of coffee.  Martinez immediately called Plaintiff and asked if he was

28   going to do any work that day.  Plaintiff informed Martinez that he had finished his job duties

1   and was waiting in line for the kiosk.  Martinez stated that all she saw him doing was standing

2   around and drinking coffee all morning.  Plaintiff stated that he had just acquired the coffee, so

3   she was obviously mistaking him for someone else.  Martinez stated that she was not mistaken.

4   Plaintiff asked Martinez if he had done something wrong.  Martinez asked why Plaintiff felt she

5   was picking on him.  Plaintiff explained the earlier incidents described in his complaint and

6   pointed out that all his requests were denied, but the same requests by Hispanic inmates were

7   granted.  Martinez became agitated and responded "If that's how you feel, I'll take care of it."

8   She directed Plaintiff to clean the shower and stay away from the kiosks.  Plaintiff did as

9   instructed.

10      After Plaintiff had cleaned the shower, all inmate workers were directed to report to the

11   building office.  Once all inmate workers had arrived, correctional officers Alvarado and

12   Carivao told the workers they were having problems with Plaintiff and so, from that point on,

13   the inmate workers would not be able to use the phones or kiosks during work hours.

14      Plaintiff apologized to his co-workers and explained that the officers were mad at him.

15   Plaintiff asked Alvarado and Carivao not to punish the other inmates just because they were

16   mad at him.  Alvarado stated that the punishment would ensue because she didn't like when her

17   or her fellow officers were accused of racism.

18      A few minutes later, Plaintiff heard inmate Martinez (aka Piper) and inmate Trujillio

19   (aka Psycho) talking to Carivao in the building's breezeway  Plaintiff heard Piper state to

20   Carivao, "We will fuck that fool off, just don't take the phones from us because of his stupid

21   ass."  Carivao replied, "We will see, let me talk to my partner."

22      Later, Plaintiff asked Piper if there was going to be an issue.  Piper said no but that

23   Plaintiff messed up.  Plaintiff asked what that meant, but Piper walked away.

24      Shortly thereafter, Plaintiff noticed a group of inmates talking amongst themselves.  The

25   group consisted of Piper, Psycho, Calkins (aka Rich), and Bravo (aka Grande).  Plaintiff had a

26   bad feeling about the situation, so grabbed a broom and mimicked sweeping to protect himself.

27      Officer Alvarado came out of the office and handed Plaintiff a dust pan and directed

28   Plaintiff to take it to the mop closet.  Plaintiff stated that this dust pan was kept in the podium,

4

not the mop closet.  Alvarado asked if Plaintiff was refusing a direct order.  Plaintiff said he was not and started to take the dust pan to the mop closet.  Alvarado stopped Plaintiff and directed him to leave the broom.

Upon entering the mop closet, Plaintiff heard shuffling feet come toward the closet. Plaintiff turned and was punched in the face by Grande.  Two most inmates, Rich and Psycho, joined and all beat Plaintiff.  Plaintiff curled into the fetal position until the beating stopped. When Plaintiff started to raise up, he received a kick to the lower left side of his back.  This caused excruciating pain.  Plaintiff started urinating and could not stop.  He believes this was due to internal damage.

When Plaintiff was sure he was alone in the mop closet, he tried to get up.  The pain was too great.  A couple of minutes later, Plaintiff hears boots coming up the stairs and someone enter the closet.  Plaintiff curled into the fetal position again.  Officer Alvarado said "Get the fuck up!"  Plaintiff tried to get to his feet slowly.  Alvarado said she would hit her alarm and inform responding officers that she saw Plaintiff attack the inmates who had assaulted him.

Plaintiff made it to his feet.  He noticed Officer Carivao standing behind Alvarado. Carivao instructed Plaintiff to return to his cell and remain there until instructed to do otherwise.  Plaintiff did as instructed.

While in his cell, Plaintiff spoke with his cellmate and then went to take a shower.

While in the shower, Officer Martinez directed Plaintiff to return to his cell.  Plaintiff finished his shower and returned to his cell.  At approximately 09:00 hours, officer Martinez made another announcement that yard program was open but dayroom program would be delayed.  After the other inmates were let out to yard, officers Alvarado and Carivao went to Plaintiff's cell.  They ordered Plaintiff's cellmate to leave.

Then Alvarado took a step inside the cell and Carivao remained just behind her. Alvarado asked whether or not Plaintiff heard when Carivao ordered Plaintiff to remain in his cell until he was told to leave.  Plaintiff responded that he had heard him.  Alvarado stated that since Plaintiff could not follow simple instructions, he needed to strip out.  Plaintiff told her a

female officer should not being doing this.  She said she could have one of Plaintiff's buddies do it instead.  Plaintiff states that she was clearly referring to the inmates who just assaulted him.

Plaintiff removed his shoes, socks, shorts, and shirt.  Alvarado then said "completely naked, lose the boxers too."  Plaintiff complied and was told to turn around.  Plaintiff faced the other direction so his back was facing the officers.  Carivao said that the inmates did a good job.  Alvarado then directed Plaintiff to turn around and face her.  Plaintiff complied but covered his private parts.  Alvarado told him to move his hands out of the way.

Plaintiff asked the officers why they didn't just leave him alone and wasn't it enough that they had just had him assaulted.  Alvarado stated that it would be enough when she felt it was enough and when she felt Plaintiff had learned his lesson.

Plaintiff moved his hand and said he had learned his lesson.  Alvarado told Plaintiff to shut up and said she would determine when he had learned his lesson.  She and Carivao then made racial jokes about Plaintiff's genitalia.  At one point, Plaintiff said he was not going to just stand around for their ridicule.

Alvarado then told Plaintiff to turn around and put his hands behind his back.  Alvarado whispered to Carivao something that sounded like "Take him down."  Carivao shoved Plaintiff to the ground.  Plaintiff hurt his left knee on a mounted steel stool.  Carivao yanked one of Plaintiff's wrists behind his back.  Plaintiff was in extreme pain.  Carivao put his knee on Plaintiff's back and wrenched Plaintiff's arms up.  Plaintiff's face was on a mattress and he could not call out.

Alvarado then put a metal baton between his butt cheeks.  She asked Carivao if he thought Plaintiff learned his lesson.  Carivao said he did not know.  Carivao told Plaintiff not to leave his cell for two weeks and not to file any grievances or go to medical for his injuries.  He told Plaintiff he could be "got" from anywhere in the prison and all the officers would have his back and Plaintiff wouldn't make it out of prison alive.  He asked if Plaintiff understood.  Plaintiff replied "Fine, just get the fuck off of me."

6

Alvarado said "This motherfucker just don't get it!' and pushed the metal baton inside Plaintiff's rectum.  Alvarado pressured the baton while telling Plaintiff not to tell anyone what happened.  Plaintiff agreed and begged them to stop.  Alvarado took the baton out and stated, "We better not hear anything else about this."

Plaintiff did not leave his cell or report the issue.  Plaintiff was injured and bleeding.

On September 24, 2019, Alvarado came to Plaintiff's cell, conducted another unclothed body search, and told Plaintiff that if he ever said anything about the prior incident, she would write him up saying he exposed himself to her.  This body search was directed by c/o Alvarado and was accompanied by c/o Jaminez.

On October 1, 2019, Alvarado conducted another unclothed body search and said Plaintiff could come out now that the marks on the back of his head had healed, but that he had to keep his shirt on at all times.

Plaintiff's job was changed, but Plaintiff was not let out for his new job.  Correctional Officer Hinajosa said it was her choice who would be let out.  Plaintiff filled out a request form, but never received a response.

On November 28, 2019, there was a search of all cells in building 1.  Plaintiff was directed to take his mattress down to the metal scanner, being operated by Officer Hinajoa.  Hinajoa asked if Plaintiff only had a week left.  Plaintiff said about that, give or take a couple of days.  Hinjosa said "That's not too long to go without your things," and then directed Plaintiff to sit at a table.  When Plaintiff returned to his cell, he saw an officer taking his T.V.  Plaintiff asked why it was being removed.  The Officer said he had not make sure it belonged to Plaintiff and if it did, it would be returned.  When Plaintiff reached his cell, he realized the officers had also taken his fan, hot pot, hair trimmers and battery charger.

Approximately an hour later, Sergeant Valazquez came to the cell and stated that all Plaintiff's property was altered.  He asked if Plaintiff wanted to send his property home or donate it.  Plaintiff said his property was not altered and Plaintiff would like it returned.  Sergeant Valazquez stepped close to the closed cell door to make sure the Plaintiff could hear and stated that he thought plaintiff would have learned his lesson with the "ass whoopen" he

7

1  took last time Plaintiff decided to mess with officers, so maybe Plaintiff would now leave

2  officer Hinajosa alone if he lost all his shit.

3       Plaintiff alleges on information and belief that Warden Stu Sherman failed to properly

4  train defendants Alvarado and Carivao to ensure they did not use excessive force against

5  prisoners, and failed to train Defendant Martinez to ensure the safety of all prisoners.

6  **III.    ANALYSIS OF PLAINTIFF'S CLAIMS**

7       **A. Excessive Force and Failure to Protect in Violation of the Eighth Amendment**

8       "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

9  restraints on prison officials, who may not... use excessive physical force against prisoners."

10 Farmer, 511 at 832.  "[W]henever prison officials stand accused of using excessive physical

11 force in violation of the [Eighth Amendment], the core judicial inquiry is... whether force was

12 applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

13 cause harm."  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).

14      When determining whether the force was excessive, the court looks to the "extent of

15 injury suffered by an inmate..., the need for application of force, the relationship between that

16 need and the amount of force used, the threat 'reasonably perceived by the responsible

17 officials,' and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503

18 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of

19 physical force generally do not implicate the Eighth Amendment, significant injury need not be

20 evident in the context of an excessive force claim, because "[w]hen prison officials maliciously

21 and sadistically use force to cause harm, contemporary standards of decency always are

22 violated."  Hudson, 503 U.S. at 9.

23      To establish a failure to protect claim, the prisoner must establish that prison officials

24 were deliberately indifferent to a sufficiently serious threat to the prisoner's safety.  Farmer v.

25 Brennan, 511 U.S. 825, 837 (1994).  "'Deliberate indifference' has both subjective and

26 objective components."  Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013).

27 The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to

28 inmate... safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

The Court finds that Plaintiff has stated a cognizable claim against Defendants Alvarado and Carivao for excessive force in violation of the Eighth Amendment. Plaintiff has alleged that Defendants Alvarado and Carivao used force maliciously and sadistically to cause harm.

The Court finds that Plaintiff has also stated a cognizable claim against Defendant Martinez for failure to protect in violation of the Eighth Amendment. Construing all facts in his favor at this screening stage, Plaintiff has sufficiently alleged that Defendant Martinez knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

**B. Conspiracy**

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must present evidence that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff's complaint alleges facts that would constitute a conspiracy claim against Defendants Martinez, Alvarado and Carivao by alleging facts indicating that they had a

1    meeting of the minds to share the objective of having Plaintiff attacked by inmates and
2    Alvarado and Carivao.

3        **C.  Deliberate Indifference to Serious Medical Needs in Violation of the Eighth**
4           **Amendment**

5        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
6    inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d
7    1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This
8    requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a
9    prisoner's condition could result in further significant injury or the unnecessary and wanton
10   infliction of pain,'" and (2) that "the defendant's response to the need was deliberately
11   indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation
12   and internal quotations marks omitted), overruled on other grounds by WMX Technologies v.
13   Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

14       Deliberate indifference is established only where the defendant *subjectively* "knows of
15   and disregards an *excessive risk* to inmate health and safety."  Toguchi v. Chung, 391 F.3d
16   1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).
17   Deliberate indifference can be established "by showing (a) a purposeful act or failure to
18   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."
19   Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an
20   unjustifiably high risk of harm that is either known or so obvious that it should be known") is
21   insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825,
22   836-37 & n.5 (1994) (citations omitted).

23       A difference of opinion between an inmate and prison medical personnel—or between
24   medical professionals—regarding appropriate medical diagnosis and treatment is not enough to
25   establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);
26   Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a
27   physician has been negligent in diagnosing or treating a medical condition does not state a valid
28   claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds that Plaintiff has stated a cognizable claim based on deliberate indifference to serious medical needs against Defendants Alvarado and Carivao by alleging that they prohibited him from seeking medical care for injuries caused by them and other inmates.

### D.  First Amendment

The First Amendment protects a prisoner's right to seek redress of grievances from prison authorities and a prisoner's right of meaningful access to the courts. Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015). In the context of prisons, a First Amendment retaliation claim is comprised of five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995) overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Moreover, the Ninth Circuit has held that "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009). "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." Id. at 1271.

Plaintiff has stated a cognizable claim for violation of the First Amendment against Defendants Alvarado and Carivao based on their alleged threats against him if he filed a grievance against them.

### E.  Fourth Amendment Unreasonable Search

The Fourth Amendment provides a limited right to bodily privacy in prison. See Bull v. City & Cty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Mitchenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). In general, courts evaluate the reasonableness of a bodily search of a prisoner under the Fourth Amendment by considering: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted. Bell v. Wolfish, 441 U.S. 520, 559 (1979); Mitchenfelder, 860 F.2d at 332; Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985). Cross-gender pat-down searches that "are done briefly and while the inmates are fully clothed, and thus do not involve intimate contact with the inmates," and are performed "in a professional manner," do not violate the Fourth Amendment.  Grummett, 779 F.2d at 496; see Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011). However, a strip search, even if conduct with all due courtesy, is a "frightening and humiliating" experience. Byrd, 629 F.3d at 1142. "The desire to shield one's clothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963). The Ninth Circuit has upheld policies regarding cross-gender observation of a prisoner's intimate body areas where the cross-gender participation was infrequent, irregular, or from a distance. See Byrd, 845 F.3d at 922  (discussing Mitchenfelder, 860 F.2d at 334; Grummett, 779 F.2d at 495). Consistent with Mitchenfelder and Grummett, the Ninth Circuit has approved the observation of the First Circuit: "inadvertent, occasional, casual, and/or restricted observations of inmate's naked body by a guard of the opposite sex [does] not violate the Fourth Amendment, [but] if the observation was other than inadvertent, occasional, casual, and/or restricted, such observation would (in all likelihood) violate the Fourth Amendment,

1  except in an emergency situation." Byrd, 629 F.3d at 1144 (quoting Cookish v. Powell, 945

2  F.2d 441, 447 (1st Cir. 1991)).

3         Plaintiff's complaint states a cognizable claim against Defendant Alvarado for

4  conducting a cross-gender strip search that was unreasonable under these legal standards.

5  **F. Claims Against Warden Sherman**

6         A person deprives another of a constitutional right, "within the meaning of § 1983, 'if

7  he does an affirmative act, participates in another's affirmative act, or omits to perform an act

8  which he is legally required to do that causes the deprivation of which complaint is made.'"

9  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting

10 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be

11 established when an official sets in motion a 'series of acts by others which the actor knows or

12 reasonably should know would cause others to inflict' constitutional harms."  Preschooler II,

13 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely

14 resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus.

15 Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533

16 F.3d 1010, 1026 (9th Cir. 2008).

17        Supervisory personnel are generally not liable under section 1983 for the actions of

18 their employees under a theory of *respondeat superior* and, therefore, when a named defendant

19 holds a supervisory position, the causal link between him and the claimed constitutional

20 violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d

21 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a

22 claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must

23 allege some facts that would support a claim that the supervisory defendants either: personally

24 participated in the alleged deprivation of constitutional rights; knew of the violations and failed

25 to act to prevent them; or promulgated or "implemented a policy so deficient that the policy

26 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

27 violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations

28 omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  For instance, a supervisor may

1  be liable for his "own culpable action or inaction in the training, supervision, or control of his

2  subordinates," "his acquiescence in the constitutional deprivations of which the complaint is

3  made," or "conduct that showed a reckless or callous indifference to the rights of

4  others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal

5  quotation marks, and alterations omitted).

6  　　　Plaintiff has failed to plead a cognizable claim against Warden Sherman.  Plaintiff

7  alleges that "on information and belief" that Warden Sherman failed to adequately train

8  Defendants not to use excessive force and to ensure the safety of prisoners.  However, there are

9  no facts that Warden Sherman participated in them, knew about them, or created a policy that

10  was the moving force behind the violation.  Plaintiff's allegations are also only conclusory

11  statements, rather than facts that Warden Sherman failed to train defendants.

12  **IV.　CONCLUSION AND ORDER**

13  　　　The Court finds that the following claims should proceed past the screening stage: a

14  claim against Defendants Alvarado and Carivao for excessive force in violation of the Eighth

15  Amendment; a claim against Defendant Martinez for failure to protect in violation of the Eighth

16  Amendment; a claim against Defendants Martinez, Alvarado, and Carivao for conspiracy to

17  violate Plaintiff's Eighth Amendment rights; a claim for deliberate indifference to serious

18  medical needs against Defendants Alvarado and Carivao; a claim for violation of the First

19  Amendment against Defendants Alvarado and Carivao; and a claim for violation of the Fourth

20  Amendment for an unreasonable search against Defendant Alvarado.  The Court also finds that

21  Plaintiff's complaint fails to state any other cognizable claims.

22  　　　Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely

23  give leave [to amend] when justice so requires."  Accordingly, the Court will provide Plaintiff

24  with time to file an amended complaint curing the deficiencies identified above.  Lopez v.

25  Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file an amended

26  complaint within thirty days.

27

28

14

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Additionally, Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to a district court judge consistent with this order.

Finally, Plaintiff may choose to notify the Court in writing that he does not wish to file an amended complaint, and instead wants to proceed only on the claims found cognizable by the Court.

Based on the foregoing, it is HEREBY ORDERED that:

1.     Within thirty (30) days from the date of service of this order, Plaintiff shall either:

    a.   File a First Amended Complaint, which the Court will screen in due course;

    b.   Notify the Court in writing that he does not want to file an amended complaint, and instead wants to proceed only on the following claims: a claim against Defendants Alvarado and Carivao for excessive force in violation of the Eighth Amendment; a claim against Defendant Martinez for failure to protect in violation of the Eighth Amendment; a claim against Defendants Martinez, Alvarado, and Carivao for conspiracy to violate Plaintiff's Eighth Amendment rights; a claim for deliberate indifference to serious medical needs against Defendants Alvarado and Carivao; a claim for violation of the First Amendment against Defendants Alvarado and Carivao;

1    and a claim for violation of the Fourth Amendment for an unreasonable

2    search against Defendant Alvarado; or

3        c.   Notify the Court in writing that he does not want to go forward on only the

4    claims found cognizable by this order or file an amended complaint, in

5    which case the Court will issue findings and recommendations to a district

6    judge consistent with this order.

7    2.   Should Plaintiff choose to amend his complaint, Plaintiff shall caption the

8    amended complaint "First Amended Complaint" and refer to the case number

9    1:20-cv-00131-EPG; and

10   3.   Failure to comply with this order may result in the dismissal of this action.

11

12   IT IS SO ORDERED.

13   Dated:   **May 19, 2020**                       /s/ Erica P. Grosjean

14                                        UNITED STATES MAGISTRATE JUDGE